# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA CHRISTODOULOU, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PS GLOBAL LLC D/B/A DAKOTA NUTRITION,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Maria Christodoulou ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant PS Global LLC d/b/a Dakota Nutrition ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.     This is a putative class action lawsuit on behalf of the purchasers of Defendant's elderberry dietary supplements (the "Products").[1] Defendant markets, sells and distributes the Products through numerous retail stores and online websites.

2.     Elderberry is derived from a flowering plant called Sambucus which has become a popular dietary supplement in recent years due to its high antioxidant levels and purported benefits as a natural supplement to help strengthen consumers' immune systems. The popularity

---

[1] The Products include Defendant's "Extra Strength Elderberry 3-in-1 Immune Booster Capsules", "Extra Strength Elderberry Gummies", and "Immune Defense 7-in-1 Immune Booster Capsules"

of elderberry supplements skyrocketed in the past two years as consumers sought products that might offer protection from the novel coronavirus. According to consumer reports, the sales of elderberry supplements increased by 169% since the outset of the pandemic in comparison to sales from previous years.[2]

      3.     In an attempt to distinguish itself from competitors, Defendant engaged in a deceptive marketing campaign where it touted the Products as having an "Extra Strength" dose of "elderberry" and "antioxidants" which "helps the immune system," as depicted below:



---

[2] https://www.nutritionaloutlook.com/view/how-elderberry-became-an-immune-health-superstar-last-year-2021-ingredient-trends-to-watch-for-food-drinks-and-dietary-supplements (last accessed July 22, 2022).





4.      Despite its representations to the contrary, however, Defendant's Products do not contain the amount of elderberry represented on the Products' labeling and marketing materials. In fact, the amount of elderberry that the Products possess is so *de minimis* that using the word "elderberry" on the Products' packaging is misleading; as well as any representations that the Products contain high levels of antioxidants that can help strengthen consumers' immune systems.

5.      These conclusions are corroborated by the National Advertising Division's ("NAD") recent investigation into these very issues. Specifically, the NAD, a Better Business Bureau nonprofit program charged with monitoring and evaluating truth and accuracy in national advertising, conducted an investigation and determined that Defendant had not proffered sufficient evidence to demonstrate that the Products had any meaningful amount of elderberry or antioxidants.[3] As part of the proceedings, the NAD reviewed various laboratory tests submitted by Defendant which tested the sources of the Products' raw ingredients as well as the molecular composition of the Products in their final state.[4] In reviewing the results of the sources of the Products' raw materials, the NAD found that the "results were, in some instances, inconsistent and inconclusive and otherwise did not confirm the existence of elderberry in the tested products."[5] Furthermore, the NAD found that testing of the sources of the Products' raw materials, rather than the finished Products, was insufficient to substantiate the presence of "the claimed ingredient after processing and manufacturing."[6] To make matters worse, the NAD

---

[3] https://bbbprograms.org/media-center/newsroom/dakota-nutrition-elderberry-claim (last accessed July 22, 2022).

[4] https://hbw.pharmaintelligence.informa.com/RS152679/Labs-HighPerformance-Chromatography-Results-Dont-Help-Dakota-Nutritions-Elderberry-Claims (last accessed July 22, 2022). A copy of the article is attached as Exhibit A.

[5] *Id.*

[6] *Id.*

found that the second set of tests that tested Defendant's Products in their final state indicated that the presence of elderberry in the Products was "hard to tell" and the signal as being "too low."[7] The tests also indicated that the presence of elderberry in Defendant's Extra Strength Elderberry Gummies was "barely visible and did not match the bands from the standard elderberry sample."[8] Similarly, the tests results of Defendant's Extra Strength Elderberry 3-in-1 Immune Booster Capsules and Immune Defense 7-in-1 Immune Booster Capsules "show a very small amount of elderberry fruit extract," containing 1.12mg per capsule of the Extra Strength Elderberry 3-in-1 Immune Booster Capsules (rather than the advertised 500mg) and 0.045mg per 2 capsules of the Immune Defense 7-in-1 Immune Booster Capsules (rather than the advertised 350mg).

6.       As a result of the huge disparity between the claimed versus the actual amount of elderberry present in Defendant's Products, the NAD asked Defendant to discontinue the use of the word "elderberry" in the name of the Products as well as all express and implied claims about their level of antioxidants and immune-related health claims.[9] In so doing, the NAD explained that although "[i]t is common industry practice to have a product name highlight a key ingredient and consumers are generally accustomed to naming conventions that identify a main ingredient [Dakota's] evidence did not provide a reasonable basis for claims related to the presence of any elderberry in the Elderberry Gummies and Elderberry Capsule."[10] The NAD further stated that despite being "reluctant to require an advertiser to change the name of a product" simply because it could be misleading, "where a challenged product claim amounts to an unsupported express claim, extrinsic evidence of consumer confusion is not required to recommend a product name

_____

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

change."[11] Defendant's blatant lies about the elderberry content of its Products were so egregious that, for the first time, the NAD suggested that a manufacturer change the name of its products. Indeed, the NAD did not even review the evidence proffered by Nature's Way Brands LLC (the competitor that brought the proceeding before the NAD).[12] Despite agreeing to "comply with NAD's recommendations" and "abide by NAD recommendations in future advertising,"[13] as of the date of this Complaint, Defendant continues to advertise and sell the Products in blatant disregard of the NAD's recommendations.

7.      Plaintiff and the proposed class members relied on Defendant's representations when purchasing the Products. Had they known that Defendant's representations were false, however, they would not have purchased Defendant's Products, or they would have paid less for them. Furthermore, because Defendant's Products do not contain the purported qualities or health benefits represented therein, Plaintiff and the proposed class members did not receive the full benefit of their bargains. As such Plaintiff and the proposed class members suffered an injury in fact as a result of Defendant's misleading and deceptive practices.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act, ("CAFA") 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 Class Members; (2) there is diversity because Plaintiff is a citizen of New York and Defendant is a citizen of Arizona; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts

---

[11] https://www.dwt.com/insights/2022/07/stay-advised-whats-new-this-week-july-18 (last accessed July 22, 2022).
[12] *See supra* footnote 4.
[13] *See supra* footnote 3.

and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in New York, including Plaintiff's purchase of the Products.

10.     Venue is proper because Plaintiff resides in Bay Shore, New York and many of the proposed class members reside in the Eastern District of New York, and throughout the state of New York. Defendant does substantial business in this district and a substantial part of the events or omissions giving rise to the proposed class members' claims, including Plaintiff's purchase of the Products, occurred in this district in Suffolk County, New York.

## PARTIES

11.     Plaintiff Maria Christodoulou is a citizen of New York who resides in Bay Shore, New York. Plaintiff purchased the Products for her personal use during the applicable statute of limitations from retail stores throughout Suffolk County and online retailers. Plaintiff's most recent purchases were Defendant's Extra Strength Elderberry Gummies which she purchased online for approximately $29.99 on or about April of 2022. Prior to purchasing the Products, Plaintiff saw and read their packaging which stated that they were a "Dietary Supplement" that possessed a high dose of "Elderberry" which would help strengthen her "Immune" system. Plaintiff relied on these representations by believing that the Products indeed contained the amount of "Elderberry" represented therein which would support her "Immune" system due to the high antioxidant levels derived from the Products' purported elderberry content. Had Plaintiff known that the Products representations were false, she would not have purchased the Products or would have paid less for them. Additionally, in making her purchases Plaintiff paid a price premium because the price of Defendant's Products was inflated as a result of the false and

misleading claims regarding their nutritional value.

12.     Defendant PS Global LLC d/b/a Dakota Nutrition is an Arizona limited liability
company with its principal place of business in Scottsdale, Arizona. Defendant manufactures,
markets, advertises, and sells the Products throughout the United States. Defendant created
and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of
the Products.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action on behalf of herself and all other similarly situated
persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the
Classes are defined as:

> **Nationwide Class:** All persons in the United States who, during the maximum
> period of time permitted by law, purchased Defendant's Products primarily for
> personal, family or household purposes, and not for resale.

> **New York Subclass:** All persons residing in New York who, during the maximum
> period of time permitted by the law, purchased the Products primarily for personal,
> family or household purposes, and not for resale.

14.     The Classes do not include (1) Defendant, its officers, and/or its directors; or (2)
the Judge to whom this case is assigned and the Judge's staff.

15.     Plaintiff reserves the right to amend the above class definitions and add additional
classes and subclasses as appropriate based on investigation, discovery, and the specific theories
of liability.

16.     ***Community of Interest***: There is a well-defined community of interest among
members of the Classes, and the disposition of the claims of these members of the Classes in a

single action will provide substantial benefits to all parties and to the Court.

17.     *Numerosity*: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

18.     *Existence and predominance of common questions of law and fact*: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)     The true nature, quality, and quantity of the elderberry ingredients in the Products;

(b)     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(c)     Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(d)     Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(e)     Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(f)     Whether Plaintiff and the members of the Classes are entitled to restitution; and

(g)     Whether Plaintiff and the members of the Classes are entitled to attorney's fees

and costs?

19.     ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

20.     ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

21.     ***Superiority:*** A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)     The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b)     If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)     Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
**Quasi-Contract / Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

22.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

23.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

24.     Plaintiff and Nationwide Class Members conferred benefits on Defendant by purchasing the Products.

25.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Nationwide Class Members' purchases of the Products.

26.     Retention of those moneys under these circumstances is unjust and inequitable because Defendant's Products do not contain the represented amount of "Elderberry," nor do they provide the "Immune" system health benefits represented on the packaging of the Products due to the lack of antioxidants stemming from the Products' deficient elderberry content. These misrepresentations caused injuries to Plaintiff and the Nationwide Class Members because they would not have purchased (or paid a premium for) the Products if the true facts were known.

27.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Nationwide Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

### COUNT II
### Violation of the State Consumer Protection Statues[14]
### (On Behalf of Plaintiff and the Nationwide Class)

28.     Plaintiff incorporates by reference each of the allegations contained in the

foregoing paragraphs of this Complaint as though fully set forth herein.

29.     The Consumer Protection Statutes of the Nationwide Class prohibit the use of

deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

30.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair,

and misleading acts and practices by conspicuously misrepresenting on the packaging of its

Products that they are a "Dietary Supplement" that possesses a high concentration of

"Elderberry" which helps strengthen its consumers' "Immune" systems. Despite those

representations, however, the Products do not contain the represented amount of "elderberry,"

nor do they provide the immune system health benefits due to the lack of antioxidants stemming

---

[14] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. &amp; Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. &amp; Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

from the Products' deficient elderberry content.

31.     The foregoing deceptive acts and practices were directed at consumers.

32.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nutritional value and health benefits of the Products.

33.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

34.     On behalf of herself and the Nationwide Class Members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT III**
**Violation of New York G.B.L. § 349**
**(On Behalf of Plaintiff and the New York Subclass)**

35.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

36.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

37.     In its sale of Products throughout the State of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

38.     Plaintiff and the New York Subclass Members are consumers who purchased the Products from Defendant for their personal use.

39.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair,

and misleading acts and practices by conspicuously misrepresenting on the packaging of its Products that they are a "Dietary Supplement" that possess a high dose of "Elderberry" which helps strengthen its consumers' "Immune" systems. Despite those representations, however, the Products do not contain the represented amount of "elderberry," nor do they provide the immune system health benefits due to the lack of antioxidants stemming from the Products' deficient elderberry content.

40.   The foregoing deceptive acts and practices were directed at consumers.

41.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nutritional value and health benefits of the Products.

42.   As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

43.   On behalf of herself and the New York Subclass Members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**COUNT IV**
**Violation of New York G.B.L. §350**
**(On Behalf of Plaintiff and the New York Subclass)**

44.   Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

45.   New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

46.   Defendant violated New York General Business Law § 350 by conspicuously

misrepresenting on the packaging of its Products that they are a "Dietary Supplement" that possess a high dose of "Elderberry" which helps strengthen its consumers' "Immune" systems. Despite those representations, however, the Products do not contain the represented amount of "elderberry," nor do they provide the immune system health benefits due to the lack of antioxidants stemming from the Products' deficient elderberry content.

47. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

48. Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

49. As a result of Defendant's false advertising, Plaintiff and the New York Subclass Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

50. On behalf of herself and the New York Subclass Members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)      For compensatory, statutory and punitive damages in amounts to be determined

by the Court and/or jury;

(d)      For prejudgment interest on all amounts awarded;

(e)      For an order of restitution and all other forms of equitable monetary relief; and

(f)      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees

and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.

Dated: July 22, 2022                          Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By:   */s/ Adrian Gucovschi*
      Adrian Gucovschi

630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
E-Mail: adrian@gr-firm.com

EXHIBIT A

We use cookies to improve your website experience. To learn about our use of cookies and how you can manage your cookie settings,
please see our Cookie Policy. By continuing to use the website, you consent to our use of cookies.

✕



*This copy is for your personal, non-commercial use. For high-quality copies or electronic reprints*

*for distribution to colleagues or customers, please call +44 (0) 20 3377 3183*

Printed By **Adrian Gucovschi**

# Labs' High-Performance Chromatography Results Don't Help Dakota Nutrition's Elderberry Claims

05 Jul 2022 | **NEWS**

by **Malcolm Spicer** | @TheTanSheet | malcolm.spicer@informa.com

## Executive Summary

NAD's review was shorter than it might have been because Dakota Nutrition stopped using around 30 challenged disease claims, leaving a total of eight claims made on labels, its website and online retailers' platforms about the amount of elderberry in its products.

Hurry! There are 6 days left in your free trial.

To continue your access HBW Insight subscribe today.

SUBSCRIBE

Note: your trial gives you access to the most recent year of content.





*Source: Shutterstock*

Dakota Nutrition Inc. didn't contest a challenge to disease claims for its elderberry supplements and it's not contesting an industry self-regulation group's finding that it didn't support its other ad claims, including some product names.

BBB National Programs Inc.'s National Advertising Division reviewed a challenge from Schwabe Group business Nature's Way Brands LLC against Dakota Nutrition's claims that its supplements contain specific amounts of elderberry as well as around 30 disease claims.

The NAD's review was shorter than it might have been because Dakota Nutrition advised the group that it had stopped using all its disease claims, leaving a total of eight claims made on labels, its website and online retailers' platforms about the amount of elderberry in its products *(see list below)*.

The Scottsdale, AZ, firm not only failed to convince NAD attorneys that it could support the eight claims for its Extra Strength Elderberry 3-in-1 Immune Booster capsules, Extra Strength Elderberry gummies and Immune Defense 7-in-1 Immune Booster capsules, but also that it had evidence to state in advertising, "Elderberries are present in Dakota Nutrition's products at advertised dosages."

The disease claims Dakota Nutrition was using included "Prevents, treats and reduces many of the symptoms of common cold and sore throats," "Seasonal allergy, cold support – This isn't your mom's Elderberry Syrup or Cold & Cough Medicine" and "Improves Fertility for women with endometriosis," according to the report.

Without evidence of elderberry in the products, using the term elderberry in product names is false and misleading advertising, NAD attorneys said in a report published on 29 June.

**Claims Reviewed And Rejected**

"elderberry capsules"

"elderberry gummies"

"black elderberry extract (150mg)"

"150mg elderberry per serving"

"150mg of Black Elderberry"

"150mg of Sambucus Nigra Extract"

"elderberries are very high in antioxidants"

"extra strength antioxidant"

"It is common industry practice to have a product name highlight a key ingredient and consumers are generally accustomed to naming conventions that identify a main ingredient. [Dakota Nutrition's] evidence did not provide a reasonable basis for claims related to the presence of any elderberry in the Elderberry Gummies and Elderberry Capsule," the report states.

As well, Dakota Nutrition's evidence provided so little support for its claims, the attorneys said they didn't need to review the information Nature's Ways submitted to support its challenge.

The firm disagreed with NAD attorneys on the quality of its evidence but indicated it would comply with their recommendations.

"Dakota Nutrition believes that raw material testing of botanical ingredients, which complies with Food & Drug Administration labeling standards … should be sufficient to satisfy NAD standards," according to the firm's statement included in the NAD report.

Due to its immune health benefits, elderberry use has increased during the COVID-19 pandemic, the NAD reported. In 2020, elderberry was a top-selling herbal supplement for US retailers, with sales increasing 150% from 2019. (Also see "US Herbal Supplement Sales Pass $10Bn For First Time In 2020 As Consumers Hunt Immunity Health" - HBW Insight, 15 Sep, 2021.)

# Results 'Inconsistent, Inconclusive'

Capitalizing on growing consumer demand for elderberry, however, should include offering elderberry at its advertised amounts. NAD attorneys reported that no evidence Dakota Nutrition submitted supported its elderberry content claims.

The firm provided certificates of analysis from an accredited laboratory for each product advertised with challenged claims and an evaluation of incoming raw materials and packaging materials form for the raw material used in all of its elderberry products. It also submitted digital photographs of chromatograms from high-performance thin-layer chromatography tests conducted on its raw material.

Dakota Nutrition provided additional testing from a second accredited laboratory, including HPLC and HP liquid chromatography test results for Elderberry Capsules, Elderberry Gummies and Immune Capsules; chromatograms associated with the testing; and ultraviolet visible spectroscopy test results for Elderberry Gummies.

The test "results were, in some instances, inconsistent and inconclusive and otherwise did not confirm the existence of elderberry in the tested products," NAD attorneys said.

Dakota Nutrition contended it could rely on CoAs from an accredited laboratory as confirmation of ingredients in a product, but the attorneys countered that testing on a product is necessary to confirm the presence of an ingredient to determine whether consumers are buying it containing "the claimed ingredient after processing and manufacturing."

CoAs for the firm's immune capsules and elderberry gummies stated that the detection of elderberry was based on testing of the raw material elderberry and not the finished products; a COA for its Elderberry Capsules "merely indicates that elderberry fruit extract is part of proprietary blend but does not indicate that the presence of elderberry was tested by any confirmation method or process," according to the report.

The HPLC and HPTLC test results including chromatograms for all three elderberry products, rather than confirming Dakota Nutrition's claims, indicated "hard to tell" and "signal too low."  An HPLC chromatogram for Elderberry Gummies didn't show peaks consistent with the presence of elderberry, and the HPTLC testing showed chromatograph bands "barely visible and did not match the bands from the standard elderberry sample."

The HPLC results along with corresponding chromatograms for the elderberry and immune capsules "show a very small amount of elderberry fruit extract," the report states. The elderberry capsules had 1.12mg per capsule of elderberry extract and the immune capsules had 0.045mg of per 2 capsules.

UV-Vis test results indicated the presence of black elderberry for the Elderberry Gummies, but because the technology evaluates the presence of anthocyanins from sources other than elderberry, NAD attorneys determined the results aren't reliable evidence to conclusively show the presence of elderberry in Dakota Nutrition's gummies.